IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA       :

       :

   v.                :   Criminal No. DKC 13-0492-001
                               Civil Action No. DKC 18-0002

       :

ANTHONY TORELL TATUM

       :

**MEMORANDUM OPINION**

Petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is ready for resolution. (ECF No. 425). Also pending are two subsequent filings from Petitioner that are properly construed as motions for leave to file supplements to his § 2255 motion. (ECF Nos. 538 and 561). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Petitioner's motion will be denied, and, while the motions to supplement will be granted, the relief they seek will be denied.

## I.   Background

On February 24, 2014, Mr. Anthony Torell Tatum ("Petitioner") was charged in an eight-count superseding indictment. (ECF No. 24). On December 30, 2014, Petitioner entered a guilty plea to three of the charges — count 1: Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or More of Cocaine and One Hundred Grams or More of Heroin in violation of 21

U.S.C. § 846; count 7: Possession of a Firearm in Furtherance of a Drug Trafficking Offense in violation of 18 U.S.C. § 924(c); and count 8: Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956.  (No. 94).  On July 23, 2015, he was sentenced to 324 months' imprisonment, consisting of 264 months on count one, 240 months concurrent on count eight, and a consecutive 60 months on count seven. (ECF No. 211).

On July 29, 2015, Petitioner filed a notice of appeal to the Fourth Circuit.  (ECF No. 213).  The Fourth Circuit subsequently appointed Richard Finci to represent Mr. Tatum in his appeal, the same attorney who had represented him during his plea negotiations, the entry of his plea, and at sentencing.  (ECF No. 217).  On June 10, 2016, the Fourth Circuit affirmed the judgment and sentence against Mr. Tatum.  (ECF No. 355).  Twelve days later, the court stayed its mandate pending a motion for rehearing.  (ECF No. 359).  While this request was pending, Petitioner also filed a motion to withdraw his guilty plea in this court on August 4, 2016.  (ECF No. 371).  On October 12, 2016, the Fourth Circuit denied Petitioner's request for a rehearing.  (ECF Nos. 388 and 389).  On November 3, 2016, the Fourth Circuit issued its mandate. (ECF No. 391).  Four days later, this court issued an opinion and order denying Mr. Tatum's motion to withdraw his guilty plea.

Mr. Tatum continued to fight his conviction on multiple fronts.  First, Petitioner appealed the order denying his motion

to withdraw the guilty plea on December 9, 2016. (ECF No. 395). Second, on January 12, 2017, the court received notice from the Supreme Court that Mr. Tatum had filed a petition for writ of certiorari on his original appeal a few days earlier. (ECF No. 398). On February 21, 2017, the Court denied this petition, thus finalizing Mr. Tatum's conviction. (ECF No. 408). *See United States v. Segers*, 271 F.3d 181, 185-86 (4th Cir. 2001) ("The courts of appeals to address the issue have consistently concluded that a judgment of conviction becomes final under § 2255 (f)(1) when the Supreme Court denies certiorari."). The same day this entry was made, the Fourth Circuit affirmed the denial of Petitioner's motion to withdraw his guilty plea, and this ruling took effect on March 16, with the issuance of the Fourth Circuit's mandate. (ECF Nos. 407 and 410).

On January 4, 2018, Petitioner timely filed the currently pending motion to vacate, set aside, or correct sentence. (ECF No. 425). More than two years later, on July 6, 2020, Mr. Tatum filed a motion that attempted to supplement his petition. It was docketed as, and will be construed as, a motion for leave to file a supplemental § 2255 motion. The motion cites to recent Supreme Court caselaw as a basis for its claim and its timeliness. (ECF No. 538). A few months later, on November 12, Petitioner filed another attempted supplement that will similarly be treated as a

3

motion for leave to supplement his motion to vacate/correct sentence. (ECF No. 561) (filed under seal).

## II. Motion to Vacate

### A.  Standard of Review

To be eligible for relief under § 2255, a petitioner must show, by a preponderance of the evidence, that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). "[T]he scope of review of non-constitutional error is more limited than that of constitutional error; a non[-]constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" *United States v. Mikalajunas*, 186 F.3d 490, 495-96 (4th Cir. 1999) (internal citations omitted).

A *pro se* movant is entitled to have his arguments reviewed with appropriate consideration. *See Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978). But if the § 2255 motion, along with the files and records of the case, conclusively shows that he is not entitled to relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. § 2255(b).

B.    Ineffective Assistance of Counsel Legal Standard

The bulk of Petitioner's motion rests on various alleged deficiencies in the performance of his former counsel, Mr. Finci. To establish ineffective assistance of counsel, the petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a strong presumption that counsel's conduct falls within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *Strickland*, 466 U.S. at 688–89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). A determination need not be made concerning the attorney's performance if it is clear that no prejudice could have resulted from it. *Strickland*, 466 U.S. at 697.

In the context of a § 2255 petition challenging a conviction following a guilty plea, a defendant establishes prejudice by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *accord United States v. Mooney*, 497 F.3d 397, 401 (4th Cir. 2007). Moreover, Petitioner "must convince the court" that such a decision "would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). "The challenger's subjective preferences, therefore, are not dispositive; what matters is

whether proceeding to trial would have been objectively reasonable in light of all of the facts." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012).

A petitioner who pleads guilty has an especially high burden in establishing an ineffective assistance claim. As the Supreme Court of the United States explained, "[t]he plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases . . . where witnesses and evidence were not presented in the first place." *Premo v. Moore*, 562 U.S. 115, 132 (2011). Thus, a petitioner alleging ineffective assistance in the context of a guilty plea must meet a "substantial burden . . . to avoid the plea[.]" *Id.*

### C.  Alleged Coercion in the Plea Negotiations

While Petitioner's motion to vacate is fifty-three pages, not counting its numerous attachments, a large portion of it is animated by a single claim: Petitioner alleges that Mr. Finci was ineffective by allowing the government "to coerce" him into "waving his rights" by entering the plea agreement. (ECF No. 425, at 52). In particular, Mr. Tatum asserts that, during his plea negotiations, prosecutor Deborah Johnston told him, "if you don't accept some type of plea agreement and if you decide to go to trial, I will make sure that I pick the whitest, most conservative jurors from the counties in Maryland that you have never heard of

6

before." (*Id.* at 3) (quoting his first retelling of this incident during his sentencing hearing, ECF 231, at 74). Petitioner says that he looked to his counsel for help when this threat was made, but that his lawyer "looked back at him like a deer in the headlights."

The government quotes to a separate section of the motion to explain how this alleged inaction of Mr. Finci serves as the motion's central thrust:  "At the broadest level, Petitioner's claims of ineffective assistance of counsel stem from his contention that the Government engaged in 'coercing [Petitioner] into a plea of guilty and his attorney [] stood ideally [sic, idly] by and failed to present this misconduct to the Court's attention.'"  (ECF No. 457, at 5) (quoting ECF No. 425, at 20). Mr. Tatum explains that he raised this issue in a *pro se* supplemental brief in the Fourth Circuit on direct appeal, which he attaches to his motion.  He says all these arguments "were available" for Mr. Finci to raise himself as his counsel, but he failed to do so.  (ECF No. 425, at 51-52) (referencing and attaching ECF No. 425-9).

### 1.   The Underlying Constitutional Claim

While the government frames the allegation of a coercive plea as purely a claim of ineffective assistance of counsel, the claim contains a separate and distinct constitutional element.  By highlighting the racial nature of the alleged threat, Petitioner

argues that "selective prosecution on the basis of race violates due process." His conviction is therefore invalid, he argues, not just because of his counsel's failure to object to Ms. Johnston's statement and tactics during plea negotiations, but because such tactics violate the Due Process Clause of the Fourteenth Amendment. (ECF No. 425, at 14) (citing, among others, *Bordenkircher v. Hayes*, 434 U.S. 357 (1978)). This argument fits with his later assertion, citing *Brady v. United States* 397 U.S. 742, 748 (1970), that his plea was not entered into voluntarily. (ECF No. 425, at 32). *Brady* found that an otherwise properly entered plea could be invalidated if "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Id.* at 755 & n.13 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), *rev'd on confession of error on other grounds*, 356 U.S. 26 (1958)). To show such a constitutional defect, Petitioner must show by a preponderance that his plea was induced by an improper threat of this kind.

### 2. Analysis

Mr. Tatum is foreclosed from making either this constitutional or ineffective assistance claim for similar reasons; at his plea hearing, the time dedicated to raising this

kind of objection, Petitioner said, under oath, that his plea was entered into voluntarily and without coercion and that he was happy with his current counsel.  As to the constitutional elements of his claim, he has not proven by a preponderance that his due process rights were violated, even if this alleged threat was made, as his statements at sentencing make clear.  By knowingly entering into a plea that he did not view as coercive at the time, Mr. Tatum cannot claim it is coercive now.

The government asserts that Petitioner's sworn statements at his plea contradict this claim.  While true, this does not fully foreclose the claim.  Normally, "in the absence of extraordinary circumstances . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal quotation marks omitted)).  But while Petitioner frames this claim as malicious prosecution, as in *Bordenkirscher*, it is better viewed as an alleged improper threat.  In this context, the Fourth Circuit has stated, "we have no difficulty in concluding that a threat by a prosecutor to do what the law will not permit, if it motivates a defendant ignorant of the impossibility, renders the plea involuntary." *Lassiter v. Turner*, 423 F.2d 897 (4th Cir. 1970).

Alternatively, a threat may be improper, even if not clearly illegal to make or carry-out, and still strike at the heart of the voluntariness of a plea.  The Fifth Circuit has explained:

> As an alternative ground for vacating his sentence, appellant contends that the prosecuting attorney unlawfully induced him to plead guilty by "venturing a guess" as to the length of sentence appellant "could expect." Without denying that "implied promises" can render a guilty plea involuntary, *See United States v. Pihakis*, 545 F.2d 973 (5th Cir. 1977), appellant's assertions here, even if true, do not make out such a promise. *See United States v. Battle*, 467 F.2d 569 (5th Cir. 1972). Appellant makes the further claim, however, that the prosecuting attorney induced his guilty plea by threatening "to prosecute appellant's wife if he fought the case." The Government has not denied that it made such threats; its position, which the court below adopted, consistently has been that appellant is "precluded" from making this argument because he swore at his arraignment that his plea was not the product of threats.  The Government overstates the law.
>
>> (T)he barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable.  In administering the writ of habeas corpus and its § 2255 counterpart, the federal courts cannot fairly adopt a Per se rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment.

> *Blackledge v. Allison*, 431 U.S. 63, 74-75, 97
> S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)
> (footnotes omitted). *See Fontaine v. United
> States*, 411 U.S. 213, 93 S.Ct. 1461, 36
> L.Ed.2d 169 (1973) (per curiam); *United States
> v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979)
> (per curiam).

*United States v. Nuckols*, 606 F.2d 566 (5th Cir. 1979).

Following this logic, more recent caselaw has confirmed that improper threats, made in certain circumstances, can provide the kind of "extraordinary circumstances" that present an exception to the otherwise binding nature of a petitioner's statements at a Rule 11 hearing.  This is true where a plea hearing purports to confirm the plea's voluntariness and petitioner's awareness of its consequences.  Building on this point, the Fourth Circuit has explained:

> Accordingly, to set aside a plea as
> involuntary, a defendant who was fully aware
> of the direct consequences of the plea must
> show that (1) "some egregiously impermissible
> conduct (say, threats, blatant
> misrepresentations, or untoward blandishments
> by government agents) antedated the entry of
> his plea" and (2) "the misconduct influenced
> his decision to plead guilty or, put another
> way, that it was material to that choice."

*Fisher v. United States*, 711 F.3d 460, 465 (4th Cir. 2013) (quoting *Ferrara v. United States*, 456 F.3d 278, 290 (1st Cir. 2006) and citing *Brady*, 397 U.S. at 755).

Petitioner alleges that his plea was involuntary because of his belief that the prosecutor could and would make good on her

threat, despite its impropriety.  Petitioner writes, "As [Mr.] Tatum understood it, were he to proceed to trial with the 'whitest' jury in the Maryland counties he would have [been] sentenced to a minimum of 30[]years."[1]   (ECF No. 425, at 39).   Similarly, he writes, "[Mr.] Tatum has no reason to disbelieve that Johnston would not make her threats a reality." (*Id.*, at 16).   But had he been properly advised, Petitioner implies, he would have known that to empanel such a jury would likely be unconstitutional, even if the threat itself was found not to be.  *See Berghuis v. Smith*, 559 U.S. 314, 327 (2010) (discussing the "fair-cross section requirement").

The thorny constitutional questions this analysis would present need not be faced, however, as Petitioner fails to show that, even if Ms. Johnston's comment constitutes "egregiously impermissible" conduct predating the plea agreement, it did not affect his decision to plead guilty, even as he railed against the alleged misconduct at sentencing.

During Petitioner's re-arraignment hearing on December 30, 2014, he was asked "Have you been threatened in any way?"   He responded: "No. No, Your Honor, no one threatened me.  This is the

---

[1] As explained more below, however, the specific fear surrounding a potential *thirty-year* mandatory minimum appears to emanate, not from this alleged threat, but from the potential penalty under 18 U.S.C. § 924(c)(1)(B)(ii) charged in the Superseding Indictment.

only deal that I was offered." Mr. Tatum was then asked specifically about the conduct of the government: "But have you been pressured because you fear retribution or injury of yourself or anyone else in any way, shape, or form, that you've been pressured into pleading? . . . You haven't been?" He again responded, "No, Your Honor." (ECF No. 450, at 40). As the government recounts, he was also asked whether he was given enough time to talk to Mr. Finci and if he was satisfied with his help in the case. He said yes to both questions and explained that he had discussed the plea with his counsel some four or five times. (ECF No. 457, at 7-8) (citing ECF No. 450, at 42-43).

It was not until his sentencing months later, during Mr. Tatum's allocution (at the end of the hearing), that he raised this claim regarding Ms. Johnston's conduct. It is clear that Mr. Tatum was aware of this threat before he agreed to accept a plea agreement, as, by his own telling, it occurred during plea *negotiations*. Moreover, it is clear that Petitioner immediately found this comment improper, as he stated at sentencing, "Needless to say, I was recoiled by her comment and I was disgusted at the blatant racism that she displayed in front of everyone." (ECF No. 231, at 74).

Nonetheless, these comments were couched in his larger attempt to rehabilitate his own character, as an allocution is meant to do, not to disown his guilty plea. In these statements

13

he railed against what he felt was an unfair caricature of him by the government. (*See* ECF No. 231, at 73) ("I am not this pitiful character that the government created."). He contrasted this with the "coercive power of authority" that he believed Ms. Johnston had wielded as an abuse of her position. He lamented that, "Mrs. Johnston doesn't know me and she doesn't really care to know me." He argued that the entire case was aimed instead at his codefendant Mr. Ford-Bey — evidenced by the fact that he alleges the prosecutor often "constantly" got their names confused. Nonetheless, he ends these statements by saying, "All I ever wanted to do was accept responsibility for my own actions, and that's it, so I can put this behind me." (*Id.* at 74-75).

At the time, Petitioner meant merely to highlight Ms. Johnston's alleged misconduct, either in the hopes that the court would punish her, or that it would contrast with the goodwill he has fostered in his community, or both. Even as he made these allegations, he reaffirmed his willingness to accept responsibility and move on. Petitioner did subsequently appeal his conviction to the Fourth Circuit. But Petitioner's brief by counsel filed on December 21, 2015, did not raise the alleged threat as a challenge to the conviction. Instead, Mr. Finci primarily argued that the "district court erred in holding Mr. Tatum responsible for more than 150 kilograms of cocaine" and that the government had put forth inadequate evidence to support its

findings.  The arguments also attempted to highlight that the vast amount of evidence demonstrated Mr. Ford-Bey's involvement in the drug conspiracy, not Mr. Tatum's involvement.

It was not until two months later that Mr. Tatum tried to raise this issue in the appellate court in a *pro se* supplemental brief filed on February 1, 2016.  Both this brief and two more that Mr. Tatum subsequently filed highlight his accusation against Ms. Johnston and quote to his allocution at sentencing.  In rejecting the appeal, however, the appellate court refused to reach the merits of the issues presented in the supplemental briefs, noting that Petitioner had counsel and therefore he did not file them properly.  *United States v. Tatum*, 651 Fed.Appx. 244, 246 (4th Cir. 2016) (citing, among others, *United States v. Penniegraft*, 641 F.3d 566, 561 n.1 (4th Cir. 2011)), *aff'd by* 658 Fed.Appx. 688 (4th Cir. 2016).

On August 4, 2016, Mr. Tatum moved to withdraw his guilty plea in this court, citing "fraud on the court."  Unlike his supplemental briefs in the Fourth Circuit, however, this motion centers around various other complaints with Ms. Johnston that have nothing to do with her alleged threat regarding an all-white jury.  In particular, Mr. Tatum expresses frustration not only with the fact that she had argued at sentencing that he was equally responsible for the admitted crimes as Mr. Ford-Bey, but also that his other codefendant, Andracos Marshall, had actually received a

lower sentence than he had despite going to trial and *not* accepting responsibility for the crime.   Ms. Johnston also allegedly committed "fraud" by arguing that Mr. Tatum was less culpable than Mr. Marshall in the latter's trial but arguing that he was "wholly responsible" for the drugs at his own sentencing.   (ECF No. 371). This motion was denied on November 7, 2016, because Fed.R.Crim.P. 11(e) bars the withdrawal of a guilty plea after sentencing, leaving "direct appeal" or "collateral attack" as the only avenues left for Mr. Tatum to raise such claims.   (ECF No. 392).

Petitioner subsequently appealed the denial of this motion to the Fourth Circuit, as well.   (ECF No. 395).   Strangely, this appeal not only reiterates Mr. Tatum's arguments involving Mr. Marshall's comparative involvement in the conspiracy, but re-raised the previously discussed threat, even though his underlying motion did not.   The unpublished opinion affirming the denial of this motion says simply that the Fourth Circuit judges "have reviewed the record and find no reversible error."  *United States v. Tatum*, 677 Fed.Appx. 140, 141 (4th Cir. 2017) (per curiam).[2]

All this history demonstrates that Petitioner's ire towards Ms. Johnston has taken on various forms throughout this case.   When

---

[2] Unlike the Fourth Circuit's adjudication of Petitioner's first appeal, it is not clear whether the court reached the merits of this claim this time.   The court will give Petitioner the benefit of this ambiguity as, regardless, the claim is without merit.

Petitioner entered the plea and was sentenced, he seems only to have viewed the claimed threat as part of her larger, alleged misconduct as a prosecutor.  He only raised this particular incident as a means to withdraw his guilty plea after that plea was voluntarily and knowingly entered at a Rule 11 hearing, and inconsistently even then.  Even though this alleged threat (and his indignation over it) would have occurred prior to the plea (if true), he fails to show that it influenced his decision to enter that plea.  He knew, of course, of the conduct, claims to have known it was improper, has not shown that his counsel gave him incorrect advice, and said under oath that he had not been threatened or coerced.  The ineffective assistance of counsel claim highlighting counsel's response, or lack thereof, to the prosecutor's alleged, improper threat will be denied.  The related constitutional claim attacking the plea as coerced will also be denied.

  **D.** **The "Machinegun"**

  Mr. Tatum separately alleges that Mr. Finci was ineffective because he failed to "move to dismiss the [superseding] indictment" based on the fact that the "supposed firearm" was not a "machinegun," as the government was claiming, and was ineffective in his failure to investigate this charge.  (*See* ECF No. 24, "COUNT SEVEN").  He argues he "never had a machinegun" so as to trigger what he purports was a threatened thirty-year mandatory minimum

17

for this charge under 18 U.S.C. 924(c)(1)(B)(ii).  Mr. Finci's suggestion, that a plea "would result in just a five (5) year statutory minimum" by comparison, therefore "skewed" his thought process.  He writes, "had Tatum not been forced away from his right to trial[,] he would have been acquitted of that count."  (ECF No. 425, at 22-23).  But the history recounted in Petitioner's filings is not borne out by the actual record, nor is there evidence of any misapprehension on his part about his gun charge carrying a thirty-year mandatory minimum prior to his plea.

The original indictment charged Mr. Tatum, in count three, with possession of a firearm in furtherance of a drug trafficking offense, between August 29, 2013 and September 5, 2013, and referred specifically to a loaded Glock Model 30 semi-automatic 45 caliber handgun in a storage unit in Temple Hills.  The statutory reference was to 18 U.S.C. § 924(c).  He was also charged with two counts of being a felon in possession of a firearm, for the AK-47 type assault rifle found in the Ft. Washington storage unit on August 27 in count two, and the Glock in count four.  (ECF No. 9 (sealed)).  The Superseding Indictment altered the charge for possession of a firearm in furtherance of drug trafficking, moving it to count seven, expanding the date range to September 6, 2013, but deleting **any** reference to a specific firearm or location, and changing the statutory reference to 18 U.S.C. § 924(c)(1)(B)(ii). (ECF No. 24).  Despite that statutory reference, the Speedy Trial

18

form filed by the Government still stated that the penalty for count 7 was 5 years to life. (ECF No. 25 (sealed)). The Superseding Indictment also contained counts for felon in possession of the AK-47 in count thirteen and the Glock in count fourteen.

At the arraignment on February 28, 2014, Magistrate Judge Sullivan referred to each count by its name and statutory reference. For count seven, he referred solely to 924(c). He then inquired whether Mr. Tatum understood the possible maximum sentence for each offense, and whether he was aware of the consecutive sentence required for the 924(c) offense. He did not state what either the maximum sentences or the consecutive mandatory minimum were. Mr. Tatum answered yes.[3]

In the run up to the anticipated trial, the Government submitted proposed jury instructions and an amended verdict sheet. For count seven, the Government did not mention "machine gun" and was NOT proposing a special verdict on the nature of the "firearm." (ECF Nos. 90 and 92). The plea agreement refers to count seven as Possession of a Firearm in furtherance of a drug trafficking offense and refers solely to 18 U.S.C. § 924(c), with no mention of 924(c)(1)(B)(ii). (ECF No. 95). The statement of facts refers to both the AK-47 and the Glock. (ECF No. 95-1). The Pre-Sentence

---

[3] The proceeding was recorded on FTR. No transcript has been prepared, but the recording is available on the court's network.

Report refers to count seven as a violation of 18 U.S.C. § 924(c)(1)(A), although the cover sheet erroneously refers to a 10-year mandatory minimum.  The rest of the report correctly reports a 5-year mandatory minimum. (ECF No. 142, ¶ 85).

On Page 20 of a 53 page motion, after excoriating the conduct of the prosecutor for alleged racism, Mr. Tatum asserts that he believed he had to plead guilty in order to avoid a mandatory thirty-year sentence on count seven for possession of a machine gun in furtherance of a drug trafficking crime.  (ECF No 425, at 20).  On page 22, he explains:

> Tatum had yet another concern regarding the superseding indictment, that is, he was charged with a "machinegun" under 18 U.S.C. § 924(c)(1)(B)(ii).  Tatum had reviewed the Federal Code and learned that by itself he could not receive less than thirty (30) years for just this count.  When Finci informed Tatum that a plea would result in just a five (5) year statutory minimum, it too skewed Tatum's thought-process, in that, he never had a machinegun.  In that vein, Tatum never faced the thirty (30) year mandatory minimum that the indictment alleged.  Consequently, had Tatum not been forced away from his right to trial he would have been acquitted of that count.  Surely, this Court does not believe that the "type" of weapon is not an element of that count as charged under United States v. O'Brien, 560 U.S. 218 (2010).  On that note, a review of Supreme Court precedent shows that had Tatum been provided his right to trial the Government would not have been free to simply

20

amend that indictment, as that would be structural error.[4]

What should have occurred was for Finci to move pre-trial to dismiss that indictment. That is, since Finci knew—or should have known that the firearm in count-seven was not a "machinegun" the competent move was to move to dismiss the indictment. Perhaps that decision was based on the fact that Finci never investigated whether this supposed firearm was a "machinegun" and instead simply relied on the misconduct in Johnston's charging decision[s].

Finci's substandard performance surfaced even before the superseding indictment, in that, Tatum had requested Finci to file a motion to suppress based on the fact the ostensible drugs in the storage-unit were based on an illegal search. Finci informed Tatum that since the storage unit was not rented by him he had no standing under the Fourth Amendment. See Exhibit-C.[5] If not for Johnston's threats and the information regarding count-seven carrying a thirty (30) statutory minimum, at trial Tatum could have shown that, not only was he not the primary renter of the unit, but video would have shown

---

[4] Even if count seven is read as charging possession of a firearm that is a machinegun, rather than any nonspecific firearm, Mr. Tatum is wrong about the viability of a prosecution for a lesser included offense. Fed.R.Crim.P. 31(c)(1). *Cf. United States v. Kuzma*, 967 F.3d 959, 977 (9th Cir. 2020)(possession of machinegun is a lesser included offense of possession of an unregistered machinegun); *United States v. Hiraldo-Arzuaga*, 2020 WL 3270298, *3 (D.P.R. June 16, 2020)(possession of a firearm is lesser included offense of possession of a machinegun). And, an error in the citation to a statute is not necessarily fatal to an indictment. Fed.R.Crim.P. 8(c).

[5] A motion to suppress was filed (ECF Nos. 13 and 50), the Government argued lack of standing, but the court resolved the motion on the merits and not for lack of standing, which presented a complex issue. (ECF No. 438, at 24).

that more than three individuals accessed that
unit.

Mr. Tatum's affidavit suggests that he did not discuss this
issue with Mr. Finci in detail until after he entered the plea:

> Subsequent to Johnston's threats I
> investigated count seven and learned that it
> carried a 30-year mandatory minimum. When I
> reviewed the plea agreement it only contained
> a statutory minimum of five-years and I
> believed that it was in my best interest not
> to go trial and risk receiving the 30-year
> penalty that was charged in count-seven.
> That, however, changed when I learned that
> count-seven charged a "machinegun" and I never
> had or was involved in or with such a weapon.
> As such, when I brought it to Finci's
> attention he simply informed me that there was
> no harm because I was only going to receive
> five-years for that count.  I explained to
> Finci that when I plead guilty to avoid the
> statutory mandatory minimum 30-years that
> would run consecutive to any other counts of
> conviction that decision was on the belief
> that Johnston could, somehow convict me of
> having a "machinegun."  Finci never explained
> to me that Johnston would not only have to
> prove the § 924(c) elements, but also the type
> of weapon involved.  Had this been explained
> to me at any stage of these proceedings I would
> have insi[s]ted on going to trial.

(ECF No. 425-2, at 1, 3, the pages are out of order).

An email exchange attached as an Exhibit (ECF No. 425-7 at 3)

corroborates that understanding and contains the following:

> **From ANTHONY TORELL TATUM on 10/27/2016
> 2:20:40 PM wrote**
>
> Mr. Finci, Am I the only client that you have
> ever conversed with via email inside of
> federal prison within the past 7 years? I'm
> sorry if my questions are not clear to you so

> let me try once again.  By the way, you were
> the one who brought up Attorney and client
> privileges not me.  However, since YOU brought
> it up, my question to you was simple.  In my
> case was the ASUA's exempt from attorney and
> client privileges?  I have one more question
> that I've been trying to ask you for the past
> few months.  Can you explain to me what are
> the elements of count 7 in my indictment which
> is a 924(c)(1)(B)(ii)?  Thank's [sic]

Mr. Finci responded on October 27 at 7:06 pm:

> Your communications with me and confidential
> discussions are privileged communications.
> The citation you referenced to
> 924(c)(1)(B)(ii), as you already know,
> prohibits possession of a machine gun.
> However, the Count in your indictment, as
> worded, does not charge you with possession of
> a machine gun and your guilty plea was to the
> 5[-]year mandatory minimum type of firearm
> which is a handgun.  I understand that this
> statutory citation may have been to the wrong
> subsection and you should definitely raise the
> issue in post conviction if your post
> conviction attorney thinks it may help you.

The fact that neither the plea nor the sentence included the statutory enhancement for a machinegun under § 924(c)(1)(B)(ii), as the government highlights, is somewhat beside the point.  (ECF No. 457, at 13).  The question is whether Mr. Finci failed to investigate an issue or improperly advised Mr. Tatum prior to the plea and, if so, whether Petitioner was prejudiced by the allegedly false belief that this specific subsection could be successfully brought against him as charged.

Mr. Tatum was never informed by the court that count seven carried a mandatory thirty-year minimum sentence.  Nor does the

23

record reflect that Mr. Finci was confused over the definition of machine gun or the exposure Mr. Tatum faced for count seven.  Most importantly, the record does not reflect that any misapprehension Mr. Tatum had was a result of something Mr. Finci told him.  While Petitioner conclusorily argues that he was misadvised by counsel, his affidavit and the emails establish that any discussion came after the entry of the guilty plea, and not before.  Mr. Tatum does not appear to have asked Mr. Finci until after the plea about the statutory reference.  Instead, his knowledge about the import of the statutory reference came from his own research.

What is clear also is that drug quantity was the paramount issue guiding the plea discussions and resulting sentencing.  Mr. Tatum acknowledged that he faced a mandatory ten-year minimum for the drug conspiracy, and that the maximum was life imprisonment. The view of the parties as to the actual scope of the conspiracy and quantity for which he would be held responsible varied drastically.  There simply was no issue, factual or legal, surrounding the 924(c) charge.  Two firearms were found in storage units that also contained significant evidence of drug trafficking.  While the statutory reference in count seven applies to a firearm that is a machinegun, that word never appears in the indictment and everyone, from the magistrate judge at arraignment, to counsel during trial preparation, and to the court and counsel at the rearraignment, treated the charge as referring only to a

nonspecific firearm with a mandatory minimum of five years.  This
claim will be denied.

### E.   The Storage Unit Search

He similarly argues that Mr. Finci failed to file a motion to
suppress the drugs found in the storage-unit, despite the fact
that Mr. Tatum told him it was an illegal search.  (ECF No. 425,
at 23).  He says his former counsel told him he lacked standing
under the Fourth Amendment to challenge that search, as he did not
rent the space.  But Petitioner cites to "Exhibit-C" that contains
a subsequent email from Mr. Finci to the probation office that
does not dispute the unit belonged to Mr. Tatum.  (*See* ECF No.
425-5, at 7).  He writes, "If not for Johnston's threats and the
information regarding count-seven carrying a thirty (30) statutory
minimum, at trial Tatum could have shown that, not only was he not
the primary renter of the unit, but video would have shown that
more than three individuals accessed that unit."  (ECF No. 425, at
23).

It is difficult to understand this contention, inasmuch as
Mr. Finci did file and litigate a motion to suppress concerning
the storage units.  (ECF Nos. 13, 50 and 438).  The court considered
the arguments made in support of this motion and denied it.  (ECF
No. 87).

Nonetheless, the government, for its part, argues that
Petitioner cannot show prejudice and, regardless, counsel's pre-

plea tactics should be granted a high level of deference, as is the case with the previous allegation.  (ECF No. 457, at 9) (citing, among others, *United States v. Mason*, 774 F.3d 824, 828 (4th Cir. 2014) (Attorneys "are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success.")).  The effectiveness of Mr. Finci on this issue need not be addressed, however, as Petitioner never claims prejudice, nor can it be implied.  Mr. Tatum explicitly states that the but for cause of his refusal to go to trial was the alleged threat of an all-white jury and the threat of the sentence the machinegun charge carried, *not* the failure to challenge the search.  Even ignoring that this issue was already raised and litigated (as the government seems to do), Petitioner does not claim that a suppression motion would have succeeded (and thereby obviated his need to plead), as required to show prejudice.  (*Id.*). This claim will be denied.

**F.   Speedy Trial Act and the Threat to Withdraw**

Mr. Finci was also ineffective, Petitioner claims, due to his failure to file "for his speedy trial rights" as "[Mr.] Tatum had instructed." (ECF No. 425, at 21) (citing *United States v. Tinkleberg*, 563 U.S. 647 (2011) and *Zedner v. United States*, 547 U.S. 489 (2006)).  He argues that not only did Mr. Finci ignore his instructions but told Mr. Tatum that he could "either take the plea offered or counsel would withdraw."  (*Id.*).

The first part of the claim lacks merit.  At the arraignment on the Superseding Indictment, counsel did assert the right to a speedy trial.  (ECF No. 32 (sealed)).  Moreover, the government correctly argues that Mr. Tatum has failed to plead facts sufficient to prove a Speedy Trial Act (or constitutional) violation occurred and so cannot argue that Mr. Finci was ineffective in not raising the issue.  Regardless, he does not state that this first failure prejudiced him by causing him to accept the plea.  He does, however, imply that counsel's threat to withdraw did induce him to do so and that he would have gone to trial otherwise.  The government does not address this second allegation in its opposition at all.  (*See generally* ECF No. 457).

In *Spann v. United States*, No. RBD-10-168, 2011 WL 1599235, at *4 (D.Md. Apr. 27, 2011), Judge Bennett dealt with a similar allegation in a § 2255 motion that a plea was coerced because the petitioner's counsel allegedly threatened to withdraw if a plea offer was not accepted.  There the allegations were even more serious, as the petitioner claimed that his counsel went so far as to threaten to derail any eventual trial if the plea was not taken.  Judge Bennett, however, explained that such claims after conviction were foreclosed by the petitioner's Rule 11 statements that the petitioner entered the plea voluntarily and was satisfied with counsel.  *Id; see also United States v. Cullen*, 943 F.2d 50, at *2 (Table) (4th Cir. 1991) (finding a district court did not err

in finding that the petitioner's representations during his Rule 11 hearing invalidated his § 2255 claim that his lawyer had coerced him into the plea by, among other things, threatening to withdraw). Similarly, Mr. Tatum said his plea was in no way coerced and was entirely voluntarily at his plea hearing.  This claim will be denied.

### G.   Misleading Advice on the Scope of the Conspiracy

Mr. Tatum asserts that counsel failed to challenge what he believes is an improperly expansive scope of the drug conspiracy with which he was charged.  Petitioner argues that, "[Mr.] Finci assured [Mr.] Tatum that if he pleaded guilty he would be responsible for conduct that occurred after August 17, 2013, but before September 6, 2013.  He attaches an email from Mr. Finci expressing Mr. Tatum's wish to strike the phrase "from at least January 2011 until at least August 17, 2012" from the plea.  (ECF No. 425, at 44) (citing ECF No. 425-8).  He argues that these dates were nevertheless "front and center" regarding the quantity of drugs involved in the conspiracy at sentencing.  (*Id.*).

As a threshold matter, the government argues that Petitioner fundamentally misunderstands the nature of a conspiracy charge. It asserts that, "Having admitted to his involvement in the conspiracy, he cannot now limit the extent of the conspiracy for which he bears responsibility."  (ECF No. 457, at 14-15) (citing *United States v. Allen*, 716 F.3d 98, 103-4 (4th Cir. 2013)).

28

Petitioner, it points out, also acknowledged at his plea hearing "that the Government's evidence would show beyond a reasonable doubt that he conducted financial transactions in furtherance of the conspiracy dating to early 2011." (*see* ECF No. 450, at 23).

Even more centrally, the government argues, Petitioner cannot possibly claim prejudice from his lawyer's advice ultimately to proceed with the plea, or that his conduct fell below an objectively reasonable standard.  The government points out that the email that Petitioner attaches shows that counsel did exactly what he was requested he do — seek to strike language suggesting an expanded scope of involvement in the conspiracy.  Further it contends that Mr. Finci is not guilty of "turning a deaf-ear to [Mr.] Tatum,"; the sentencing hearing transcript shows, on the contrary, that Petitioner's counsel "argued at length about the scope of Petitioner's relevant conduct." (ECF No. 457, at 15-16) (referencing ECF No. 231).  Any suggestion that Mr. Finci's performance was deficient or prejudiced Mr. Tatum's decision to move forward with the plea is equally baseless.  This claim will be denied.

### H.   A Factual Basis for Plea and Conviction

Petitioner argues that he would not have plead guilty if his counsel had informed him of the government's alleged failure to establish the proper factual basis for his drug conviction.

First, he contends that the government failed to prove his knowledge that cocaine even was involved in the conduct to which he admitted.  He argues that it is "undisputed" that he was not there when a "truck load" of cocaine was seized, and there is "no dispute" that there is no evidence that Tatum "knew" the substance involved was, in fact, cocaine.  (ECF No. 425, at 32).  To support the notion that knowledge is a predicate to a proper conviction on a drug offense, Petitioner cites *McFadden v. United States*, 135 S.Ct. 2298 (2015).  *McFadden* dealt with a defendant who did not know that the substance that he was distributing (bath salts) was regulated as an analog to an "enumerated" controlled substance pursuant to 21 U.S.C. § 813.

This case is entirely different.  Petitioner is not accused of possessing drug analogs, but those that are squarely and clearly prohibited as controlled substances:  heroin and cocaine. For charges involving controlled substances, the prosecution must prove that a defendant knew that the substance was some type of controlled substance, but not that a defendant knew the specific type of controlled substance.  *United States v. Brower*, 336 F.3d 274, 276-77 (4th Cir. 2003).

The facts found in the plea agreement and recounted at both the plea hearing and sentencing show that the government had ample circumstantial evidence that Mr. Tatum knew the shipments with which he was involved contained illegal drugs.  After all, almost

every facet of the conspiracy was carried out clandestinely to avoid law enforcement — i.e. renting the storage space, in which drugs and drug proceeds were kept, under an alias and creating numerous business entities simply to hide the drug proceeds. (ECF No. 95-1, at 3).   Equally importantly, the Eleventh Circuit, affirming a conviction under § 841 and § 846 for conspiracy to possess and distribute cocaine that was challenged on similar grounds, explained:

> At the outset, we also recognize that § 841(b) provides enhanced maximum sentences for persons convicted of violating §§ 841(a) or 846, depending on the quantity and type of drug involved. 21 U.S.C. § 841(b).  Further, the enhanced statutory maximum penalties in § 841(b) cannot apply unless the jury determines the drug type and quantity involved in the overall drug conspiracy offense.  *See United States v. Sanchez,* 269 F.3d 1250, 1270 (11th Cir.2001) (en banc) . . .
>
> Although the jury must determine the quantity and type of drug involved, nothing in the statute, the Constitution, or *Apprendi* [*v. New Jersey*, 530 U.S. 466, 489 (2002)] *requires the government to prove that the defendant had knowledge of the particular drug type . . . for which a sentence is enhanced under § 841(b).*  Unlike § 841(a), § 841(b)'s penalty scheme imposes no *mens rea* requirement.  Rather, § 841(b) refers only to a violation of § 841(a) "involving" certain quantities and types of controlled substances.

*United States v. Sanders*, 668 F.3d 1298, 1309 (11th Cir. 2012) (emphasis added); *see also United States v. Collazo*, 984 F.3d 1308 (9th Cir. 2021) ("After a defendant is convicted of conspiracy

under § 846 to distribute controlled substances in violation of § 841(a)(1), the government may establish that the defendant is subject to the penalties in § 841(b)(1)(A)(viii) and § 841(b)(1)(B)(i) by proving beyond a reasonable doubt that the § 841(a)(1) offense involved the drug type and quantity set forth in the two penalty provisions. The government is not required to prove that the defendant knew (or had an intent) with respect to the drug type and quantity set forth in those penalty provisions in order for them to apply.").

While these cases involved convictions after a jury trial on direct appeal, the required proofs involved are equally applicable to Mr. Tatum's conviction. The evidence laid out in the plea amply supports that this conspiracy involved the specified quantities of heroin and cocaine, and as the government rightly contends, "[h]aving admitted his knowing participation in the larger conspiracy, Petitioner was responsible for the amount of drugs attributed to him." Circumstantial evidence, as discussed, shows that he knew what he was trafficking in was an illegal and controlled substance of some sort, as part of that conspiracy. He cannot now challenge his sentence under §841(b) based on a *mens rea* requirement that is not applicable to this provision. (*See* ECF No. 425, at 36).

Second, Petitioner claims that the government failed properly to prove the drug quantities it attributed to him individually.

Regardless, to prove either alleged non-constitutional defect with his plea, Petitioner not only has to show that the government did not establish a proper basis for the charges, but that this failure resulted in a "miscarriage of justice" or failed to meet the basic demands of fair procedure.  Therefore, even if he could show by preponderance that a factual basis for a conviction on this count was lacking, Petitioner separately would have to show that his counsel fell below an objective standard of representation to prove his attendant ineffective assistance of counsel claim.[6]  That question need not be addressed, however, as such a factual basis for the quantities of heroin and cocaine involved was not lacking.

The Fourth Circuit has explained that, "In determining whether a guilty plea has a factual basis, the district court need not rely only on the Rule 11 plea colloquy; it 'may conclude that a factual basis exists from anything that appears on the record.'" *United States v. Mastrapa*, 509 F.3d 652, 659-660 (4th Cir. 2007) (quoting *United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir. 1991) (the purpose of this requirement is "to ensure that 'the court make[s] clear exactly what a defendant admits to, and whether

---

[6] The government treats the claim solely as an ineffective assistance claim, as the heading frames the claim in this way, but a good deal of Petitioner's motion centers around the deficiency of the plea and sentencing itself, not on counsel's derivative and alleged failures.  (*See e.g.* ECF No. 425, at 35) ("A lack of factual basis for a plea is a substantial defect calling into question the validity of the plea.").

those admissions are factually sufficient to constitute the alleged crime.'"). When reviewing a conviction of this court on direct appeal, the Fourth Circuit explained in an unpublished opinion that this kind of attack on a drug conviction fails when a petitioner has stated his agreement to factual statements made during a plea hearing and which "included the drug types and quantity for which [the petitioner] was held responsible." *United States v. Gee*, 709 Fed.Appx. 240, 241 (4th Cir. 2018) (per curiam).

The facts presented in Mr. Tatum's plea hearing, and which he agreed to in accepting his plea, might alone demonstrate that there was a sufficient factual basis for Petitioner's drug conviction. Insofar as his plea left this an open question at sentencing, however, the evidence subsequently established a clear and proper basis for his conviction on drug conspiracy.

At the plea hearing, the facts of the plea were read into the record. This included that one kilogram of cocaine had been recovered at Mr. Tatum's storage space, in a box addressed to him (as opposed to his alias), as well as 258 grams of cocaine in three clear bags and around 195 grams of heroin, all found elsewhere in the rented space. His fingerprints were also recovered from a separate location containing "350 grams of cocaine hydrochloride" and other drug paraphernalia. Even though Mr. Finci interjected and attempted to blur the line between the facts contained in the plea agreement and those the government would have presented, Mr.

34

Tatum was asked directly if he agreed with all the facts read into the record concerning his own conduct.  He said yes.  He also agreed that the government would present other facts about what others had done at trial.  He was also asked "Do you agree that you are, in fact, guilty of the drug conspiracy specifically in Count One, which is to distribute, possess with intent to distribute five kilograms or more of cocaine and 100 grams or more of heroin?"  He said yes. (ECF No. 450, at 20-25).

At sentencing, as the government rightly asserts, Petitioner's counsel did not refute his admitted involvement in the conspiracy but rather challenged whether the government had proven the drug amounts involved.  Argument from both sides was heard on the matter, but ultimately it was found that the evidence established a clear lower bound for the drug amounts that could be directly attributed to Petitioner.  Within the plea and the plea hearing, Mr. Tatum had clearly and expressly agreed to participation in the conspiracy to distribute these drugs.  A single shipment interdicted from Mr. Ford-Bey's source, it was pointed out, contained thirteen boxes with an average of just under ten kilograms of cocaine each.  There was evidence, moreover, that such shipments took place on a monthly basis.  Assuming Petitioner was not the only recipient of the substances sent from this source, a conservative estimate easily would still reach the threshold of controlled substances required to support the asserted guideline

range.   In particular, it was reasoned that even "If, over 32
months, the defendant averaged just under five kilograms a month,
we'd easily reach the 150[-]kilo threshold for a level 36 [offense
level].   There is no way the evidence points lower than that.
Absolutely no way." (ECF No. 231, at 44).   Petitioner's claims —
that the necessary factual basis for his conviction and sentencing
was not established and that his counsel was deficient in his
failure to inform him of this alleged fact — are without merit and
will be denied.

## I.    The Plea's Forfeiture Provisions

Mr. Tatum claims that Mr. Finci did not properly inform him
that he was not required to forfeit the seized items as agreed to
in the plea or that he could have petitioned to "reacquire his
illegally   taken   items."    Although   Petitioner   makes   stray
references to his earlier constitutional arguments when referring
to   the   "unconstitutional plea," this   claim   is   entirely   an
ineffective assistance of counsel claim as its central question is
"Was Tatum denied the promise of effective assistance of counsel"
because of this alleged failure properly to inform Petitioner of
his rights regarding asset forfeiture.   (ECF No. 425, at 48).[7]

---

[7] The claim *does* purport to raise a non-constitutional defect;
Petitioner cites to *States v. Chamberlin*, 868 F.3d 290 (4th Cir.
Aug. 18, 2017), as prohibiting "the pretrial restraint of a
defendant's innocent property under the Federal Forfeiture statute
21 U.S.C. § 853." (ECF No. 425, at 47-48).   But the government

To state a viable ineffective assistance claim, Petitioner must first show prejudice before his counsel's performance is questioned. He fails to make such a showing.

The government rightly points out that Petitioner could not have been prejudiced by the loss of the majority of these items, as a threshold matter. It was explained that, by pleading guilty, he was agreeing to these provisions and that the plea provided that the court would issue an order of forfeiture over "assets directly traceable to the offense." Petitioner was walked through every seized bank account, along with some of the major items of value seized, and their estimated value. While not every single item was listed, Mr. Tatum was asked, "[s]o you've reviewed this list carefully here?" and he said yes. Petitioner's counsel further represented that he and Mr. Tatum had reviewed the list and, as the government highlights, had found that "a good percentage" of these items did not belong to Petitioner. (ECF No. 450, at 36). Petitioner has no interest in those items, by his own admission, and so an alleged failure to retrieve them cannot have prejudiced his decision to plead guilty.

---

rightly argues that *Chamberlain* is entirely inapposite. (ECF No. 457, at 16-17). The case involved pretrial restraint of *substitute* property, and here the government has shown that the property in question is not "untainted" property, but the proceeds of his drug conspiracy, as discussed more below. *See Chamberlain*, 868 F.3d 290, 294 (4th Cir. 2017).

While it is therefore unclear as to which items Mr. Tatum is even asserting a right of possession, this has little bearing on the ultimate outcome of his petition as he cannot possibly show prejudice in having to forfeit his purported right in *any* of these items.   Prejudice in the context of an ineffective assistance claim, as discussed, means Petitioner would not have entered the plea but for the alleged error of counsel.   For Mr. Tatum to conjecture that he would not have signed the plea and instead would have gone to trial simply because the plea contained forfeiture provisions that barred his attempts to retrieve these items defies common-sense; the weight of the evidence against him and the numerous, additional charges that would have been pursued had he gone to trial assuredly carried far more weight (if not *all* the weight) in Petitioner's decision-making during plea negotiations, as he himself highlights in his petition.

Ultimately, Petitioner has no possession rights in *any* of these items (not just those he concedes are not his) on which to base a claim of prejudice.   The government is right that the stipulated facts, agreed to by both parties as part of the plea, show by a clear preponderance that the forfeited assets were all proceeds of the conspiracy.   (ECF No. 457, at 17) (citing *United States v. Tanner*, 61 F.3d 231, 235 (4th Cir. 1995)).   A person has no right of possession in the seized "proceeds of illegal drug sales." *United States v. Sum of $185,336.07 U.S. Currency Seized*

38

*from Citizens' Bank Acct. L7N01967*, 731 F.3d 189, 194 (2nd Cir. 2013) (citing items subject to forfeiture under 21 U.S.C. § 881). This claim will be denied.

**J.   "Unknowingly, Unintelligent and Involuntary" Plea**

As a penultimate and catch-all claim, Petitioner argues that Mr. Finci's alleged failure to pursue the various theories, detailed above, "renders" his plea "unknowingly, unintelligent, and involuntary" and thus void. (ECF No. 425, at 50). It is not clear what new and independent claim, if any, this allegation makes, but Mr. Tatum seems to blame his decision to move forward with a plea on all of Mr. Finci's various, alleged oversights and shortcomings  He argues that, had Mr. Finci not counseled him to accept the plea based on faulty assumptions, he would gone to trial.  Regardless, the government correctly asserts that, "The record of [the] Rule 11 hearing reflects that his guilty plea was voluntary and intelligent." (ECF No. 457, at 8).  Insofar as it re-raises the improper threat to invalidate this plea process, it is duplicitous.  This claim is without merit and will be denied.

**K.   Reasserted Supplemental Claims**

As a final section to his main petition, Mr. Tatum attaches a copy of the *pro se* supplemental brief he filed in his first direct appeal.  He first argues that had Mr. Finci raised these issues to the Fourth Circuit on his behalf, the court "would have vacated the plea and or the sentence."  His former counsel thereby

"failed in his duty to prosecute his first appeal." He does not seek to reassert these claims directly, however, but asks "the Court to review these claims and with the arguments herein determine whether [Mr.] Finci failed in his duty to prosecute." (ECF No. 425, at 52). The standard for analyzing ineffective representation on appeal differs somewhat from the standard during trial:

> In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate (1) that his "counsel's representation fell below an objective standard of reasonableness" in light of the prevailing professional norms, *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694, 104 S.Ct. 2052. *See Smith v. Robbins*, 528 U.S. 259, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000) (holding that habeas applicant must demonstrate that "counsel was objectively unreasonable" in failing to file a merits brief addressing a nonfrivolous issue and that there is "a reasonable probability that, but for his counsel's unreasonable failure ..., he would have prevailed on his appeal").

> In applying this test to claims of ineffective assistance of counsel on appeal, however, reviewing courts must accord appellate counsel the "presumption that he decided which issues were most likely to afford relief on appeal." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir.1993). Counsel is not obligated to assert all nonfrivolous issues on appeal, as "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with

a view to selecting the most promising issues for review." *Jones v. Barnes*, 463 U.S. 745, 752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *see also Smith v. South Carolina*, 882 F.2d 895, 899 (4th Cir.1989). Indeed, "'[w]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (*quoting Jones*, 463 U.S. at 751, 103 S.Ct. 3308); *see also Smith*, 882 F.2d at 899 (counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision designed "to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims"). Although recognizing that "[n]otwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim" on direct appeal, the Supreme Court has recently reiterated that "it [will be] difficult to demonstrate that counsel was incompetent." *Robbins*, 120 S.Ct. at 765. "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" *Id.* (*quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986)).

*Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000).

Petitioner has not shown that any decision concerning which issues to raise on appeal constituted ineffective representation. None of the issues is meritorious or weighty enough to overcome the decision to raise the ones pursued. While Petitioner asks for these arguments to be incorporated into his overall petition only as they relate to an ineffective assistance of counsel claim, this question cannot be addressed without assessing the merits of these

arguments; as discussed, the Fourth Circuit never got this far in dismissing them on procedural grounds, and so Petitioner is not barred from raising them here.

The government does not address this attempt to revive these claims en masse.  These claims are almost entirely duplicitous to those discussed above, arguing, among other things:  1) an alleged error by the district court in accepting his guilty plea, 2) a lack of notice to Mr. Tatum of the quantity of drugs foreseeable from this plea, 3) a failure of the district court properly to determine the drug amounts involved in sentencing, and 4) a convoluted argument and somewhat unintelligible theory as to why the Doctrine of Constitutional Avoidance requires a *mens rea* of "knowingly" or "intentionally" to be applied to the penalties available for drug crimes under 21 U.S.C § 841.  In an introductory section entitled, "Pertinent Facts Relevant to the Supplemental Issues," this *pro se* motion recounted the prosecutor's alleged threat regarding potential jury composition, as alluded to above, and explained that such threats had "devastating consequence[s]" on him.  (ECF No. 425-9, at 1-10 and 15-21).  These allegations are directly addressed by the discussion above and are otherwise without merit; they are therefore similarly incapable of forming the basis of an ineffective assistance claim and will be denied.

The only novel theory contained in this attachment and raised, untested, before the Fourth Circuit is that Mr. Tatum's 32[4]-

month-long federal prison sentence is an "excessive and unconstitutional" punishment under the Eighth Amendment. (*Id.*, at 11-15). He argues that this sentence is "many times longer" than any sentence he could have received in state court and thus violates the amendment's "prohibition of cruel and unusual punishments." But in affirming a mandatory minimum sentence of 120 months for a written plea agreement to only one count of possession with intent to distribute and with only five grams of cocaine base involved under 21 U.S.C. § 841(a)(1), the Fourth Circuit found, in an unpublished opinion, that the sentence was presumed reasonable as it fell "within the applicable guidelines range." *United States v. Philips*, 411 Fed.Appx. 591, at *1 (4th Cir. 2011) (citing *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)).

The plea, in turn, calculates that Petitioner's guilty plea established facts that support a base offense level of 38 should he go to trial,[8] in viewing count one as an adjustment to count eight (and viewing the counts together as a "group"). In addition,

---

[8] The plea agreement also notes, however, that should Petitioner proceed to trial, the parties stipulate to an additional 2-level enhancement under 18 U.S.C. § 1956(h). The government also expresses its intention therein to seek another 2-level enhancement based on Mr. Tatum's alleged obstruction of justice during his investigation and prosecution and to retain the option to challenge any 2-level reduction sought for the Defendant's apparent and prompt recognition and affirmative acceptance of personal responsibility. (ECF No. 95, ¶ 6(c),(e),(f)).

count seven, the plea explained, stood to impose a statutory mandatory minimum of five years, applied "consecutive to the sentence imposed by Counts One and Eight." (ECF No. 95, ¶ 6 (d),(g)). An offense level of 38 and a Criminal History Category I produces a guideline range of 235 to 293 months on Counts One and Eight *alone*, plus a five-year mandatory minimum (60 months) for count seven, as pointed out at sentencing. (ECF No. 231, at 77). This means that Mr. Tatum's sentence fell within the projected guideline range stipulated to by the parties. Moreover, Petitioner ultimately received less than the 360 months' imprisonment agreed to in the plea agreement. (ECF No. 95, ¶ 9). His sentence is presumptively reasonable, and Petitioner has not carried his burden to rebut this presumption. He therefore cannot predicate a claim against his attorney on the excessiveness of his sentence under the Eighth Amendment. His attempt to supplement his main petition with this argument, as with the others, will be denied.

### III. Motion to Supplement the Motion to Vacate, Set Aside or Correct Sentence

A few months ago, Mr. Tatum filed a motion for leave to file a supplement to his § 2255 motion, which lodged a new claim that his plea was invalid under *Rehaif v. United States*, 139 S.Ct. 2191 (2019) and *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020).

44

(ECF No. 538).  It is unclear whether this motion is timely, but, regardless, it will be denied on the merits.

Pursuant to 28 U.S.C. § 2255(f), a federal prisoner must file a motion to vacate, set aside, or correct his sentence within one year of the latest of the following dates:

> (1) the date on which the judgment of conviction becomes final;

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and *made retroactively applicable to cases on collateral review*; or

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

(emphasis added).  An otherwise untimely amendment to a timely claim is considered timely when it "relates back" because it arises out of the "conduct, transaction, or occurrence set forth . . . set forth in the original pleading." *Mayle v. Felix*, 545 U.S. 664, 649 (2005) (citing Fed.R.Civ.P. 15(c)(2)).

*Rehaif* involved a conviction, after trial, under 18 U.S.C. § 922(g) and § 924(a)(2).  § 922(g) makes it illegal for certain persons to possess firearms, and § 924(a)(2) provides that anyone

who "knowingly" violates the former provision can be sentenced to up to ten years in prison.  The Court found the government must prove that a defendant knew both that he possessed a gun and that he was part of the relevant category.  *Rehaif*, 139 S.Ct., at 2194. This ruling is entirely inapplicable to Mr. Tatum's conviction under § 924(c), however.  Regardless, any claim that Mr. Tatum did not knowingly possess a firearm while knowingly engaging in a drug conspiracy is belied by his plea agreement and Rule 11 hearing that affirmed his admission of guilt to count one and seven of the Superseding Indictment.  (ECF No. 24).

Alternatively, in *Gary*, a petitioner cited to *Rehaif* and successfully argued on direct appeal that his plea to §922(g) was not knowingly and intelligently entered, as he did not understand one of the elements of his crime, namely that "he knew he had the relevant status when he possessed [the firearm]."  *Gary*, 954 F.3d at 198 (quoting *Rehaif*, 139 S.Ct. at 2194).  Even assuming that *Gary* cast a new light on *Rehaif*, which was more than a year old at the time Petitioner's filing, whether the latter announced a retroactive rule is not clear.  As *Gary* was decided on direct appeal, it did not address the retroactivity of *Rehaif* at all. Only a couple of circuits, addressing the issue in the context of successive or second § 2255 motions — where an initial petition has already been ruled on — have implied it is not retroactive for any type of collateral challenge. *See e.g. Mata v. United States*,

969 F.3d 91, 93 (2nd Cir. 2020) ("The Supreme Court's *Rehaif* decision resolved only a question of statutory interpretation and did not announce a rule of constitutional law (much less a new one, or one that the Supreme Court has made retroactive on collateral review or that was previously unavailable").[9]

As the Fourth Circuit has not squarely addressed the issue and as the petition fails on the merits, a pronouncement on this far-reaching issue can be avoided.  *Gary* is inapposite for the same reason as *Rehaif*:  it deals with an entirely different subsection of the gun statute.  The request to supplement Petitioner's original motion with this claim will be granted, but the claim itself will be denied.

## IV.  Second Motion to Supplement[10]

████████████████████████████████████████████████████

██████████████████████████████████████████████████ ,

---

[9] The other circuits that have grappled with the retroactivity of *Rehaif* have similarly done so only in the context of second or successive § 2255 motions that must, as per § 2255(h), cite a new *constitutional* rule to be timely.  As such, the majority of these do not fully answer the question of the case's retroactivity because the case does not announce a constitutional rule at all, but a statutory one.  *See Tate v. United States*, 982 F.3d 1226, 1228 (9th Cir. 2020); *In re Sampson*, 954 F.3d 159, 161 (3<sup>d</sup> Cir. 2020); *Khamisi-El v. United States*, 800 Fed.Appx. 344, 349 (6th Cir. 2020); *but see In re Palacios*, 931 F.3d 1314 (11th Cir. 2019) ("[E]ven if *Rehaif* had announced a new rule of constitutional law . . . it was not made retroactive to cases on collateral review by the Supreme Court.").



---

[10] This section of this opinion will be filed under seal as it recounts other portions of the record that are under seal but that are not ultimately pertinent to Petitioner's plea or sentence. As such it will be denied, and a redacted version of this Memorandum Opinion will be filed on the public docket, while the full version will remain under seal.

## V.   Conclusion

For the foregoing reasons, Petitioner's motion to vacate, set aside, or correct his sentence, as well the claims raised in his requests to file supplemental motions to vacate/correct, will be denied.  A separate order will follow.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. §§ 2254 or 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner.  A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's order.  *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where the court denies the petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that "reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); see also *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).  Where a motion is denied on a procedural ground, a certificate of appealability will not issue unless the petitioner can "demonstrate both (1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the

district court was correct in its procedural ruling." *Rose v. Lee,* 252 F.3d 676, 684 (4th Cir. 2001) (internal marks omitted).

Petitioner does not satisfy the above standards. Accordingly, a certificate of appealability will not issue. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
